IN DISTRICT COURT, COUNTY OF BARNES, STATE OF NORTH DAKOTA

| | |
|---|---|
| American General Contractors, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> General Casualty Company of Wisconsin, a foreign insurance corporation. <br><br> Defendant. | CASE NO. _____ <br><br> **SUMMONS** |

THE STATE OF NORTH DAKOTA TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to appear and defend against the Complaint in this action which is herewith served upon you by serving upon the undersigned an Answer or other proper response within twenty (20) days of service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Dated this 3rd day of March, 2010.

MARING WILLIAMS LAW OFFICE, P.C.

By _____
Duane A. Lillehaug (#03232)
1220 Main Avenue, Suite 105
P.O. Box 2103
Fargo, North Dakota 58107-2103
(701) 241-4141
ATTORNEYS FOR PLAINTIFF



EXHIBIT A

IN DISTRICT COURT, COUNTY OF BARNES, STATE OF NORTH DAKOTA

| | |
|---|---|
| American General Contractors, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> General Casualty Company of ) <br> Wisconsin, a foreign insurance ) <br> corporation, ) <br> ) <br> Defendant. ) | CASE NO.: _____ <br><br> COMPLAINT |

Plaintiff American General Contractors, Inc. (AGC), for its Complaint against Defendant General Casualty Company of Wisconsin (General Casualty), states and alleges:

I.

Defendant General Casualty Company of Wisconsin is a foreign insurance corporation authorized to and doing business in the State of North Dakota.

II.

At all times material herein, Defendant General Casualty had in full force and effect a Comprehensive Insurance Policy bearing policy number CCI 0351523, issued to American General Contractors, Inc., as the named insured, including for the policy periods 5/19/2004 to 5/19/2005, 5/19/2005 to 5/19/2006, 5/19/2006 to 5/19/2007 and 5/19/2007 to 5/19/2008.

III.

While the General Casualty policy was in full force and effect, a claim was asserted against AGC by the Turtle Mountain Housing Authority (TMHA) seeking damages for losses incurred by damage to its property, a 20-unit elderly housing complex

in Belcourt, North Dakota, due to mold.

IV.

The mold was discovered on or about April 2005 when the subject building was approximately 90% complete, and spread to locations throughout the building before remediation and correction efforts could be completed. Damage to the building included damage to the walls and the attic.

V.

American General Contractors tendered defense of that claim to its liability insurer, General Casualty Company of Wisconsin, which undertook the defense, under a reservation of rights, and handled the defense of the claim through arbitration proceedings.

VI.

On November 20, 2008, an Arbitration Award and Memorandum was issued, a copy of which is attached as Ex. A.

VII.

As a result of the claim asserted by TMHA, AGC suffered the following:

a. Damages in favor of TMHA and against AGC in the amount of $169,739.00 on the TMHA claim to recover mold remediation costs;

b. Incurred losses for extended overhead totaling $104,000.00 due to delay of work because of the mold remediation requirements.

VIII.

All of the work done on the TMHA project for which TMHA was awarded damages against AGC was performed by subcontractors of AGC.

IX.

Although Defendant General Casualty Company of Wisconsin fulfilled its duty to defend American General Contractors, Inc., against the claims of TMHA, it has denied coverage for indemnity to AGC for the losses and damages awarded TMHA and/or incurred by AGC, relying upon certain exclusions of the General Casualty policy or policies of insurance in effect during the applicable time periods.

X.

Notwithstanding the provisions of the policies of insurance relied upon by Defendant in denying a duty to indemnify AGC, the policy or policies applicable to the claims asserted against Plaintiff in this matter, are, as a whole, ambiguous with respect to coverage and therefore, in accordance with Aid Ins. Services, Inc. v. Geiger, 294 N.W.2d 411 (N.D. 1980) and Emcasco Ins. Co. v. L & M Development Company, Inc., 317 N.W.2d 908, 910-911 (N.D. 1985), and other cases, Defendant is obligated to provide insurance coverage to Plaintiff for the claims asserted against it by TMHA and to indemnify Plaintiff for the losses it incurred and the damages awarded to TMHA and against Plaintiff.

XI.

By way of example, exclusion l contains an exception to an exclusion granting coverage for poor workmanship performed by a subcontractor. Such granted coverage, when read in conjunction with exclusions j5 and j6, results in the policy being ambiguous as a whole with respect to the scope of coverage, because a part of the policy provides coverage which another part purportedly takes away, and therefore pursuant to the cases cited above the policy as a whole is to be interpreted in favor of coverage.

XII.

Plaintiff is entitled to a declaratory judgment pursuant to Ch. 32-23, N.D.C.C., against Defendant General Casualty Company of Wisconsin declaring that Plaintiff American General Contractors, Inc., is entitled to coverage for indemnity pursuant to the policy or policies of insurance issued by Defendant to Plaintiff with respect to the claims asserted against Plaintiff by the Turtle Mountain Housing Authority.

XIII.

Plaintiff is entitled to judgment against Defendant General Casualty Insurance Company in the amount of Plaintiff's losses and damages as indemnity for the damages awarded and losses incurred as a result of the covered property damage sustained by TMHA.

XIV.

That in the event that it is determined that a renewed policy taking effect on or after May 19, 2005, is the policy which provides coverage for any of the claims asserted by TMHA against AGC, any limitations, restrictions or reductions in coverage contained within said policies is void and unenforceable because Defendant failed to give adequate notice to Plaintiff of the reduction in coverage at the time of the policy renewal.

WHEREFORE Plaintiff demands judgment against the Defendant as follows:

1. Declaring, pursuant to Ch. 32-23, N.D.C.C., that Defendant General Casualty Insurance Company of Wisconsin is obligated to provide coverage, and to indemnify Plaintiff, for the claims and damages asserted against it by the Turtle Mountain Housing Authority and awarded against it as a result of the arbitration proceeding in that action.

2. Declaring and determining that Plaintiff is entitled to recover the amount of

$273,739.00 against General Casualty Insurance Company as a result of its duty to indemnify the Plaintiff for the losses and damages awarded against it and in favor of the Turtle Mountain Housing Authority, plus interest thereon.

3. Awarding Plaintiff American General Contractors, Inc., judgment against Defendant General Casualty Insurance Company of Wisconsin in the amount of $273,739.00, plus interest.

4. Awarding Plaintiff American General Contractors its attorneys fees in this litigation against Defendant General Casual Insurance Company of Wisconsin, an insurance corporation, in accordance with the North Dakota Declaratory Judgment Act, Ch. 32-23, N.D.C.C., along with State Farm v. Sigman, 508 N.W.2d 323 (N.D. 1993) and Western Nat'l. Mut. Ins. Co. v. Univ. of N.D., 663 N.W.2d 4 (N.D. 2007).

5. Awarding Plaintiff its costs and disbursements in this action.

Dated this 3rd day of March, 2010.

MARING WILLIAMS LAW OFFICE, P.C.

_____
Duane A. Lillehaug (#03232)
1220 Main Avenue, Suite 105
P.O. Box 2103
Fargo, North Dakota 58107-2103
Telephone: (701) 241-4141
ATTORNEYS FOR PLAINTIFF

## ARBITRATION

* * * * * * * * * * * * * * * * * * * * * * * * *

American General Contractors,

    Claimant,

vs.                                                       <u>ARBITRATION AWARD</u>

Turtle Mountain Housing Authority,

    Respondent.

* * * * * * * * * * * * * * * * * * * * * * * * *

    The Arbitration hearing was held in the above-referenced matter on October 6 - 10, 2008, in Minot, North Dakota. Claimant, American General Contractors ("AGC"), was represented by Kip Kaler, Esq. and Randall J. Bakke, Esq. Respondent, Turtle Mountain Housing Authority ("TMHA"), was represented by James F. Wagenlander, Esq. and Kevin Klingbeil, Esq.

    Based upon the evidence presented at the arbitration hearing, the undersigned makes the following award:

    1.    AGC is awarded $172,419.82, representing the balance due on its mold remediation contract.

    2.    AGC is awarded $289,361.41, representing the balance due on its original contract.

    3.    AGC is awarded $40,649.51 on its claim for extra work.

    4.    TMHA is awarded $27,126.54 on its claim for incomplete and defective work.


EXHIBIT A

5. TMHA is awarded $169,739.00 on its claim to recover mold abatement costs it paid or incurred.

6. All claims for pre-award interest are denied.

7. All claims not specifically granted are hereby denied.

8. The attached Memorandum is incorporated herein by reference.

Dated: 11/20/08

William D. Hull
Arbitrator

*wdh\mediation\wdh376\award*

2

ARBITRATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

American General Contractors,

    Claimant,

vs.                                             **MEMORANDUM**

Turtle Mountain Housing Authority,

    Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This case arose out of the construction of a 20-unit elderly housing complex owned by the Turtle Mountain Housing Authority ("TMHA"). The General Contractor, American General Contractors ("AGC") commenced this arbitration to collect its original contract balance, the balance due for mold remediation work, and for extra work performed beyond the scope of its original contract. The TMHA counterclaimed for the cost of the mold remediation work, liquidated damages, and the cost of repairing defective work or completing unfinished work.

Forty-three hours of hearings were held beginning on Monday, October 6, 2008, and concluding on Friday, October 10, 2008. The record was closed on October 10, 2008. The parties agreed to extend the time for issuing an Award until November 21, 2008.

This Memorandum is intended to provide a general explanation of how I arrived at the Award. Each claim will be addressed separately. Any issues that are not specifically addressed in this Memorandum are denied.

### AGC'S CLAIM NO. 1:  $0.00

AGC's Claim No. 1 is denied. Section 4.3.4 of the General Conditions provides the following circumstances under which a contractor is entitled to additional compensation for concealed or unknown conditions:

1. subsurface or otherwise physical conditions which differ materially from those indicated in the contract documents; or

2. unknown physical conditions of an unusual nature which differ materially from those ordinarily found to exist as inherent in construction activities of the character provided for in the contract documents . . .

Neither of those conditions were met.

### Type I

Sean Shipper, the excavating contractor, testified that his costs were more because the site was wet. The soils report indicated a high water table. Mr. Sherer testified that there was a lot of rain in the summer of 2004. The evidence established that the wet site was due to rain, a high water table, and clay soils. These conditions were consistent with what was represented in the soils report. For these reasons, the requirements for a type 1 differing site condition were not met.

### Type II

A Type II differing site condition requires a showing that the conditions differ materially from what would normally be expected. As discussed in the prior paragraph, the soil conditions were consistent with the soils report, except for a soft spot within the building footprint that was not identified in the soils report and differed materially from what would normally be expected. The contractor received a Change Order for correcting that soil condition. This claim is for increased costs due to a wet site. Mr. Sherer testified that there was an unusual amount of rain the summer of 2004, which

2

made the site very wet. Unforeseen weather ordinarily is treated as an uncompensable "Act of God" and site drainage and maintenance is ordinarily the responsibility of the contractor. Relief beyond an extension of time is usually reserved for performance impossibility caused by unexpected weather. See, *Brunner & O'Connor on Construction Law*, Ch. 14:11, v. 4, ¶ 909. For these reasons, this claim is denied.

### AGC'S CLAIM NO. 2 - $3,982.45

Claim No. 2 is granted in the amount of $3,982.45. This claim was for additional costs associated with removing soils from a soft spot within the building footprint. AGC received Change Order No. 3 to remove some soft soils. After the excavation was complete, the engineer directed that the contractor add fractured rock and geotextile fabric. This increased the contractor's costs. In addition, Change Order No. 3 provides that the work will be done on a time and material basis. That portion of the claim attributable to down time at $391.00 per day for 17 days, is denied, along with the overhead and profit attributable to the down time. There was insufficient evidence to determine how the "down time" claim was calculated. Claim No. 2 is allowed in the amount of $3,982.45.

### AGC'S CLAIM NO. 3 - $0.00

Claim No 3 is denied for the same reasons as set forth in Claim No. 1.

### AGC'S CLAIM NO. 4 - $534.00

Claim No. 4 is granted. AGC fulfilled its responsibility when it had One-Call on site before it did any excavation work. Since the line did not show up on the publicly available documents used by One-Call, it was the owner's responsibility to locate the line.

3

## AGC'S CLAIM NO. 5 - $29,501.72

This claim is granted in the amount of $29,501.72. The project was originally bid by AGC in the spring of 2003. Issues beyond AGC's control pushed the project to 2004. Had AGC been able to start in the spring or early summer of 2004, they would have been able to waterproof, backfill and enclose the building before winter. The Notice to Proceed was not given until August 5, 2004, for reasons beyond AGC's control. Because of the delay in issuing the Notice to Proceed, AGC incurred unanticipated winter condition costs. There is insufficient evidence to establish the method by which AGC calculated its claim for four weeks delay in the amount of $11,184.60. The delay portion of the claim is also denied based on the testimony of Robert Marion that it was never presented until the mediation. A markup of 15% for profit and overhead was added.

## AGC'S CLAIM NO. 6 - $72.85

Claim No. 6 is granted in the amount of $72.85.

## AGC'S CLAIM NO. 7 - $3,133.49

Claim No. 7 is granted in the amount of $3,133.49. Because of the lack of specificity in the contract documents, AGC was entitled to provide cabinets that met the minimum requirements of the specifications. Mr. Sherer testified at the hearing that cabinets meeting those requirements could have been purchased for $1,399.80. Mr. Sherer also testified that the KCMA certification referred to in Mr. Laverdure's testimony was not present on the medicine cabinets selected by the architect. AGC is entitled to recover the difference between the actual cost of the cabinets chosen by the architect of $4,164.00, and the amount AGC could have purchased cabinets meeting the specifications for. AGC is entitled to recover $3,133.49.

### AGC'S CLAIM NO. 8 - $0.00

This claim is denied. The primary cause for the delay in completion of the project past August, 2005 was the need for mold remediation. The contractor was partially responsible for the development of mold at the project. This claim is denied for that reason.

### AGC'S CLAIM NO. 9 - $0.00

Claim No. 9 is denied. The bulk of Claim No. 9 occurred during the time the mold remediation work was being done. AGC was paid for that work, which presumably included overhead and profit. Additional compensation for general conditions and home office overhead would constitute a double recovery.

### AGC'S CLAIM NO. 10 - $856.00

Claim No. 10 is granted in the amount of $856.00.

### AGC'S CLAIM NO. 11 - $1,050.00

This claim is allowed in the amount of $1,050.00. Sampson Electric is entitled to recover the wage rate increases and the cost of the TERO license for two years. Although the project lasted longer than anticipated, the evidence was insufficient to establish that the increased project length caused an increase in the number of hours it took the contractor to perform its work.

### AGC'S CLAIM NO. 12 - $1,043.00

Claim No. 12 is granted in the amount of $1,043.00.

### AGC'S CLAIM NO. 13 - $0.00

Claim No. 13 is denied. There was no evidence that Grand Forks Glass & Plaint was contractually entitled to be compensated for storage costs.

### AGC'S CLAIM NO. 14 - $476.00

Claim No. 14 is granted in the amount of $476.00. This work was performed pursuant to a Proposal Request No. G-19 dated September 20, 2005. AGC responded to Proposal Request G-19 on September 28, 2005, and agreed to perform the work for $476.00. AGC's claim is granted in the amount of $476.00. No evidence was presented that this actually delayed the project.

### AGC'S CLAIM NO. 15 - $0.00

Claim No. 15 is denied. This work was performed on a different project, and Keller has no direct claim against TMHA in this arbitration.

### AGC'S CLAIM NO. 16 - $0.00

Claim No. 16 is denied. AGC would have had to dispose of the materials somewhere if they were not stockpiled. AGC saved the cost of disposing of the material.

### AGC'S CLAIM NO. 17 - $0.00

Claim No. 17 is denied.

### AGC'S CLAIM NOS. 18 AND 19
### Balance Due On Remediation Contract - $172,419.82

Claim Nos. 18 and 19 are granted in the amount of $172,419.82. This represents the balance due for the remediation work. Amendment No. 1 doesn't state that the contractor will do all mold remediation for a guaranteed maximum price. In fact, Amendment No. 1 doesn't address the compensation for the contractor. However, the parties' course of performance supports the conclusion that the work was to be done on a time and material basis. Most persuasive is the fact that TMHA paid over $700,000.00 without raising the issue of GMP. Responsibility for the remediation work will be addressed later

## AGC'S CLAIM NOS. 20 AND 21
### Contract Balance - $289,361.41

Claim Nos. 20 and 21 are granted in the amount of $289,361.41. The work on the project has been or will be completed and the AGC is entitled to recover its contract balance, plus retention. Setoffs or back charges will be addressed later.

## TMHA'S COUNTERCLAIMS

## TMHA'S LABOR COSTS TO REACH SUBSTANTIAL COMPLETION - $0.00

This claim is denied. Robert Marion testified that TMHA agreed to donate this time.

## LABOR COSTS TO COMPLETE PUNCH LIST - $12,081.25

This claim is granted in the amount of $12,081.25. The evidence did not support an award of overtime, because the units were vacant for a substantial period of time between substantial completion and occupancy. Two Thousand Five Hundred ($2,500.00) Dollars will be deducted for overtime hours. It is difficult to evaluate this claim because work orders that would show what work was done were never produced. Nevertheless, Mr. Marion did testify that the hours comprising this claim were worked in repairing defective work and completing unfinished work. However, the evidence did establish that approximately 25% of the materials to complete the punch list were not legitimate punch list items. Consequently, the labor portion of the punch list claim will be reduced by the same amount. (75% x $14,775.00 ($15,275 - $2,500.00) = $12,081.25.)

## MATERIAL COSTS TO COMPLETE PUNCH LIST - $4,528.70

This claim is granted in the amount of $4,528.70. The evidence established that some of the materials were not appropriately classified as punch list items. For example,

7

there were over $1,000.00 in changes for mini-blinds. Other items that did not qualify as punch list items include toilet paper and ice melt. Based on the foregoing, this portion of TMHA's claim was reduced by 25%.

### SHOWER STALL REPLACEMENT/REPAIR - $7,500.00

This claim is allowed in the amount of $7,500.00. Repair estimates ranged from several hundred dollars to $70,000.00. This claim will be allowed in the amount of $7,500.00. Based on the testimony of Mr. Marion and the Arbitrator's site visit, it is clear that at least some of the shower stalls do not drain properly.

### SHINGLE REPLACEMENT - $0.00

This claim is denied. Robert Marion testified that this is a strictly cosmetic issue and that he was not aware of any leaks.

### CONCRETE REMOVAL/REPLACEMENT - $2,000.00

This claim is granted in the amount of $2,000.00. Approximately 200 square feet of flat work needs to be replaced as does approximately 60 lineal feet of curb and gutter.

### FINISH LANDSCAPING AND RESEEDING - $3,500.00

This claim is granted in the amount of $3,500.00. Mr. Marion testified that the work was done by AGC in the fall of 2006, but he could not comment on the quality of the work. Mr. Marion testified that approximately 40% of the area that was hydro-seed didn't grow. Because this is a warranty claim, AGC had the burden to prove that something other than the product or the installation caused the seed to fail. An example would be that the owner failed to water the seed. No such evidence was presented. Mr. Marion testified that TMHA paid $3,500.00 to have this work done.

8

### ADJUSTMENT AND REPAIR OF WASTE WATER PIPING - $0.00

This claim is denied. Mr. Marion testified that AGC correctly installed what was on the plans.

### ASPHALT REPAIR - $500.00

This claim is allowed in the amount of $500.00. There were indentations in the asphalt parking lot from construction dumpsters. The most credible evidence on the cost of repair was Mr. Jillson's testimony that repairs would cost $500.00.

### MANHOLE INSTALLATION - $0.00

This claim is denied. This work was within Parasien's *(sp)* scope of work. AGC and Parasien *(sp)* had a dispute and AGC delivered a check to TMHA for Parasien's *(sp)* final payment. TMHA released the check before the manhole was delivered.

### TOP SOIL FOR FINISH LANDSCAPING IN WATER AND SEWER AREA - $1,500.00

This claim is granted in the amount of $1,500.00. Apparently the area over the water and sewer line sank. This is a warranty item.

### LIQUIDATED DAMAGES FOR MOLD REMEDIATION - $0.00

This claim is denied. The mold remediation work expanded significantly beyond what was originally contemplated when Amendment No. 1 was executed.

### LIQUIDATED DAMAGES FOR DELAY IN COMPLETION OF PROJECT - $0.00

This claim is denied. There were numerous delays beyond AGC's control, including the initial delay in not providing a notice to proceed until August 5, 2004, soft soils for which AGC received a Change Order, and winter construction. The most

9

significant delay was caused by mold remediation which AGC was not primarily responsible for.

## MOLD REMEDIATION COST - $169,739.23

This claim is granted in the amount of $169,739.23. Mr. Flatten testified that in his opinion the most significant contributing factor to the development of mold was the absence of CDF and a vapor barrier in the crawl space. There was a dispute as to whether the vapor barrier was eliminated when the CDF was deleted by a change order. Mr. Flatten testified that the project documents and circumstantial evidence led him to conclude that the vapor barrier was intended to be removed when the CDF was deleted. Although I agree with Mr. Flatten's conclusion, I have also concluded that a vapor barrier without CDF would probably not have prevented the development of mold. If the vapor barrier was installed before mold developed, it would have been virtually impossible to adequately seal and keep it sealed to prevent the migration of moisture into the crawl space. All of the edges in all of the separate compartments would have to have been sealed along with penetrations for stairs, drains and floor truss supports. It would have been impossible to not to have damaged or disturbed the vapor barrier during construction of the mechanical, electrical and HVAC systems in the crawl space.

It was also Mr. Flatten's opinion that lack of ventilation during installation of the Gypcrete topping on the first floor contributed to the development of mold on sheetrock on the mail level. This was within the construction means and methods controlled by the contractor. For this reason the evidence supports a conclusion that AGC was 20% responsible for the cost of mold remediation.

The total cost of mold remediation was $848,696.17. TMHA is entitled to recover $169,739.23 for AGC's share of the mold remediation cost.

### PRE-AWARD INTEREST

An award of pre-award interest is within the discretion of the arbitrator under the American Arbitration Association Construction Industry Rules. I choose not to award pre-award interest on any of the claims. There were legitimate disputes between the parties which prevented the claims from being liquidated.

Dated: November 20, 2008.

_____
William D. Hull
Sole Arbitrator

wdh376\Memorandum 11-20-08

11